IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH J. GIRAUDO, RAYMOND A. GRINSELL, KEVIN B. CULLINANE, JAMES F. APPENRODT, and ABRAHAM S. FARAG,<br><br>Defendants. / | No. CR 14-534 CRB<br><br>**ORDER ON MOTION TO COMPEL** |

Defendants move to compel production of (1) "all documents relating to plea negotiations with any person or their counsel, including but not limited to Defendants, in which the illegal, nonconsensual recordings were played or referenced, or in which any information learned from the illegal nonconsensual recordings was discussed" and (2) "all documents relating to government communications with Gajan Thia ('Thia'), Juan Diaz ('Diaz'), or their counsel." Not. of Mot. to Compel (dkt. 201) at ii.

As an initial matter, the government maintains that this request concerns documents that are not discoverable under Federal Rule of Criminal Procedure 16(a)(2), which protects "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigation or prosecuting the case." That is partially true. To fall under Rule 16(a)(2)'s work product protection, documents "must be internal (nonpublic) documents."[1] United States v. Fort, 472 F.3d 1106,

---

[1] Rule 16 encompasses "government work product and ha[s] its genesis in the idea of work product," though it sweeps "more broadly" than its civil counterpart. United States v. Fort, 472 F.3d 1106, 1114 (9th Cir. 2007).

1120 n.5 (9th Cir. 2007). So a memorandum about, for example, how a plea negotiation affected the government's case strategy is a document "relating to plea negotiations" that Rule 16(a)(2) protects. Defendants' request, taken literally, is therefore overbroad.

But the overbreadth is not fatal. The meat of the request is for (1) any materials shown during any plea negotiations in which the illegal recordings were played or referenced, or in which any information learned from them was discussed, and documents memorializing what the government said in such negotiations, as well as (2) any materials shown to Thia, Diaz, or their counsel, and any documents memorializing what the government told them. Such discovery encompasses only what was shown or said to third parties, and thus includes neither "internal" documents nor "statements made by prospective government witnesses," Fed. R. Crim. P. 16(a)(2).[2] The question, then, is whether it is "material to preparing the defense" under Rule 16(a)(1)(E)(i). It is.

As to the first category, the government maintains only that it has provided Defendants with all documents regarding instances in which the illegal recordings were "shown" to others during plea negotiations. See Opp'n (dkt. 208) at 4. It makes no such assurances regarding instances in which the recordings—or information obtained from them—were referenced. See id. But even if that were an oversight, this category of documents still goes to the credibility of the government's contention that it did not use the illegal recordings to "obtain any new evidence, identify new subjects, develop new leads, or direct the investigation." See, e.g., Ex. 2–70 (Wynar Decl.) ¶¶ 30, 36, 41, 44; Jan. 17 H'rg Tr. 15:10–16:2, 51:23–52:5. If the illegal recordings were important enough to play a significant role in plea negotiations (failed or otherwise), it becomes harder to take the government at its word. That is impeachment value.

As to the second category, the government maintains that "none of these reference stationary recordings," which is supposedly beyond dispute because "Agent Wynar already testified the FBI did not disclose the existence of the stationary recordings to Mr. Thia at any

---

[2] The latter category is of course still subject to the Jencks Act. See Fed. R. Crim. P. 16(a)(2) (". . . except as provided in 18 U.S.C. § 3500.").

time during the investigation and Mr. Thia solicited Mr. Diaz's cooperation without the FBI's involvement." Opp'n at 5 (citing Jan. 19 H'rg Tr. at 310:8–24). But far from being "unrefuted," id., Defendants have pointed to potential holes in his story. For example, Agent Wynar testified that Thia spontaneously agreed to cooperate but apparently did not mention any such bonanza in his 302 report—and continued investigating Thia afterwards. See Mot. to Compel (dkt. 201) at 8 (citing Jan. 19 H'rg Tr. 310:1–18; Ex 2–85 (FBI 302, Thia Interview, Jan. 29 2010); Ex. 2–86 (CHS Contact Rpt., Feb. 3, 2010)); see also Opp'n at 5 (not disputing these facts). What is more, Agent Wynar need not have informed Thia about the "existence" of the illegal recordings, Opp'n at 5, for there to be a taint; he could have still relied on information obtained from them to convince Thia to cooperate. So, unlike United States v. Bissell, 634 F.2d 1228, 1233 (9th Cir. 1980), here it is not "so clear that the evidence . . . was obtained independently" as to make discovery unwarranted.

    For the foregoing reasons, the Court ORDERS the government to disclose (1) any materials shown during any plea negotiations in which the illegal recordings were played or referenced, or in which any information learned from them was discussed, and documents memorializing what the government said in such negotiations, as well as (2) any materials shown to Thia, Diaz, or their counsel, and any documents memorializing what the government told them. The Court further ORDERS the government to do so no later than February 20, 2017.

    **IT IS SO ORDERED.**

    Dated: February 16, 2017

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE